ANDREW EASTRIDGE, SR. *v.* THE RELIABLE LIFE
INSURANCE COMPANY

5-5887                                    480 S.W. 2d 131

Opinion delivered May 15, 1972

*Arnold & Arnold* by: *William Lavender,* for appellant.

*Atchley, Russell, Hutchinson & Waldrop* by: *Dale Edwards,* for appellee.

*Lloyd R. Haynes,* for appellants.

*Carpenter, Finch & McArthur,* for appellees.

CARLETON HARRIS, Justice. Appellee, Reliable Life Insurance Company, issued four life insurance policies on the life of Andrew Eastridge, Jr., the policies reflecting Andrew Eastridge, Sr. as sole beneficiary. Young Eastridge had applied for the policies and signed the application on July 23, 1970, and the application was forwarded to the insurance company's home office by the agent who had taken the application, John M. Gibson. The company required its local agents to collect two weeks premiums in advance before submission of application, but this particular application was forwarded to the company without Mr. Gibson collecting the advance premiums. The home office issued the policies and Gibson's local account was debited in the amount of $5.08, representing

two weeks premiums, and the policies were forwarded to Gibson on or about July 31, 1970. Gibson still had not collected any money to cover his debit, and he did not deliver the policies. On the morning of August 2, 1970, Andrew Eastridge, Jr. died in an automobile accident. Claim was made to appellee for the insurance proceeds, but the company denied the claim and filed an action in the Miller County Circuit Court seeking a declaratory judgment declaring that the company had no liability to Andrew Eastridge, Sr. upon the life insurance policies in question. Eastridge answered, denying the allegations and counterclaimed seeking the policies' proceeds, and asserting that young Eastridge had paid to an agent of the company all premiums due; that the policies were in full force and effect on the date of the death of Andrew Eastridge, Jr. The case was tried before a jury and a verdict returned for appellee. From the judgment so entered, appellant brings this appeal. For reversal, only one point is relied upon, *viz*, "The lower court erred in refusing to give defendant's requested interrogatory, said interrogatory asking the jury to determine if plaintiff's course of conduct in debiting their agent's account amounted to a payment of a due premium".

After completing the court's instructions to the jury, the court gave an interrogatory reading as follows:

"Ladies and gentlemen of the jury, do you find that on, or about, July the 31st, 1970, Andrew Eastridge, Jr., did pay to an agent of Reliable Life Insurance Company the initial premium on the policies of insurance which has been issued to him on July the 27th, 1970.

Answer 'yes' or 'no'. There is a spot for each answer."

Appellant requested an additional interrogatory as follows:

"If the answer to Interrogatory No. 1 is no, do you find that Reliable Life Insurance paid the premium due by making a debit to the account of agent John Gibson?"

The court refused this interrogatory.

Gibson testified that young Eastridge signed the application for the policies on the 23rd of July, and that the application was sent in on the 25th, a Saturday morning. He said that no premium had been collected because Eastridge told him, when making the application, that he didn't have the money at that time, but if Gibson would return the following Monday, he (Eastridge) would pay him. Gibson said that he returned the following Monday, but that Eastridge still did not have the money, and he went back on the 31st of July to collect the premium of $5.08 but Eastridge said "he still didn't have the money". No premium receipt was ever given to Eastridge since he never did pay the premium. Gibson stated that when he learned that Eastridge had been killed, he went to his immediate supervisor, Paul Dowd, and told him that no premium had ever been collected on the policies and the two of them felt that it would be cheating the company to not mention the matter; the company, whose home office is at Webster Grove, Missouri, was notified.

There is no dispute but that the company required the advance payment of the initial premium, although it appears that some agents would send in an application without collecting the premium, though not advising the company of that fact.[1] In his brief appellant argues several theories, and cites the case of *Southern Farm Bureau Casualty Insurance Co.* v. *Mitchell,* 229 Ark. 964, 319 S.W. 2d 830, such case holding that an agent's oral promise to issue a written policy on a truck constitutes a binding agreement. That case is no authority in the instant litigation at all. In the first place, there is no evidence anywhere in the record that Gibson told Eastridge that the policies would be issued and the premiums would be col-

[1] James Dillard, Manager of the Reliable Life Insurance Company at Texarkana, explained the debit charge: "Every application that comes to the home office are charged back to the agent on his life register." He said that the company doesn't "keep an eagle eye on every one of them and every application that's turned in, and ask them did you collect" but that the home office does assume "that any applications that come in, are collected on, and are automatically charged to him."

lected later. In *Southern Farm Bureau,* Gibbs was a general agent and had the power to bind his principal by an oral promise to insure the truck. Also, in the present case, the theory of a waiver of the initial premium by the company is advanced. Again, such an argument contains no merit for the company could not waive something that it knew nothing about, and it never learned that the initial premium had not been paid until notified by the Texarkana office, which was after the death of Eastridge. Not only that, but Gibson was only a soliciting agent, and accordingly could not have bound the company. A "Course of Business" theory is also argued by appellant, but it can readily be seen that the interrogatory sought embraces no such contention. In addition, this case was tried solely on the proposition that the premium had been paid by young Eastridge to Gibson.[2] Of course, the jury verdict settled that question adverse to appellant.

It is apparent from reading the requested interrogatory that it embraces no theory of waiver or course of business. Neither does it incorporate the theory of a third party (the agent Gibson) paying the premium for the applicant and extending personal credit to the latter (and there is no proof at all to this effect). To the contrary, the interrogatory inquires of the jury if they found Reliable Life Insurance paid the premium due. In fact, it would not appear that the form of the interrogatory is consistent with any recognized manner of satisfying the requirement of premium payment, and it is quite confusing, in that it requests the jury to find whether the Reliable Life Insurance paid Eastridge's premium to Reliable by the debit entry. The court did not err in refusing this interrogatory.

Affirmed.

---

[2] Mike Easley, a friend of the deceased, testified that Eastridge borrowed five dollars from him to pay his insurance, and he saw young Eastridge hand Gibson the five dollar bill. This was emphatically denied by Gibson.